IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TAMI G. MUMPOWER and
CHERYL RHENA GRAUEL,

     Plaintiffs,

vs.

CASE NO. CV-98-J-1097-S

SHERIFF JAMES JONES,
et al.,

     Defendants.

**ENTERED**

APR 1 4 1999

## MEMORANDUM OPINION

Currently pending before the court is the defendants' motion for summary judgment

(doc. 57), to which the plaintiff filed a brief in opposition thereto ("plaintiff's opposition").

Thereafter, the defendants filed a reply to plaintiff's opposition. Both parties have also filed

evidentiary submissions in support of their respective positions. The defendants having

requested oral argument on their motion for summary judgment, the court heard the same on

April 14, 1999, at which time all parties were present by and through their attorneys of

record. The court has reviewed the motion, the memoranda of law and the evidentiary

submissions of the parties and considered the arguments made at the hearing.

### I. PROCEDURAL HISTORY

Plaintiffs commenced this action on May 4, 1998 by filing a complaint (doc. 1)

alleging that the defendants violated the plaintiffs' Fourth and Fourteenth Amendment rights

to the Constitution of the United States, through 42 U.S.C. § 1983 and state law violations.

The basis of the allegations for each plaintiff centers around being strip searched while in custody of the defendants upon a lawful arrest.[1]  Plaintiff Mumpower also alleges that two employees of the Shelby County jail used excessive force against the plaintiff.  *See* amendment to complaint (doc. 19) at ¶ 1.  The plaintiffs filed a wholly additional amended complaint on October 15, 1998 (doc. 30), although it contained no substantive differences.  Based upon a consideration of the pleadings oral and written arguments of the parties and evidentiary submissions, the court concludes that the motion for summary judgment is due to be granted in part and denied in part.

## II.  FACTUAL BACKGROUND

In the light most favorable to the plaintiffs, the facts of this case are as follows:  The bases of the complaint are two separate, wholly unrelated incidents both involving women who were arrested and taken to jail in Shelby County, Alabama.  Each plaintiff alleges that the strip search policy of the Shelby County jail is a violation of her constitutional rights and her right to privacy under state law.

### A. Plaintiff Mumpower

Plaintiff Mumpower is a Georgia resident who was in Alabama visiting her brother on October 18, 1997.  This plaintiff alleged that she took new medication for which she had a prescription.  Plaintiff states that she had a beer and later a glass of wine.  The plaintiff states she then blacked out and has no further recollection until she was handcuffed and

---

[1]Plaintiff Mumpower was arrested for public intoxication and plaintiff Grauel was arrested for DUI. *See* Complaint at ¶6 and ¶9.  No allegation is made by either plaintiff that her arrest was unlawful in any manner.

placed in a police car. Plaintiffs' brief at 1. Plaintiff's brother testified at deposition that the plaintiff was acting irrationally and out of character. Depo. of Giambrone at 26. By affidavit, the plaintiff states that her husband and brother "called 911 due to the fact that they were concerned about the way I was acting. I do not remember any of this."[2] Affidavit of plaintiff, submitted as Exhibit 1 to plaintiffs' brief; plaintiffs' brief at 1. Paramedics arrived and then the Shelby County Sheriff's Department deputies also came to Mr. Giambrone's apartment.[3] Plaintiffs' brief at 1. Plaintiff was arrested for public intoxication and taken to the Shelby County Jail. Plaintiffs' brief at 1-2; Affidavit of Deputy Paul George ¶ 2, submitted as exhibit D to defendant's memorandum.

After plaintiff was arrested, she was told to strip nude in front of Officer Stacey Blankenship, a female deputy. Plaintiff alleges that the officer made an inappropriate comment regarding plaintiff's physique while plaintiff was nude, however, plaintiff alleges no damages from this comment.[4] Exhibit 1; Plaintiffs' brief at 2. Plaintiff testified at deposition that she was taken into a little room for this purpose and was only there long

---

[2]In actuality, the plaintiff's husband called 911 because she started acting "like she's a mental patient." Depo. of Charles Mumpower at 22-23, submitted as Exhibit F to defendants' memorandum.

[3]The Cahaba Valley Fire & Rescue Unit responded to the 911 call. Affidavit of Stephen Brecht at ¶¶1-3, submitted as Exhibit E to defendants' memorandum. While trying to ascertain what was wrong with the plaintiff, the plaintiff kicked one of the paramedics in the chest. At this point the paramedics decided to wait outside for the Shelby County deputies to arrive. Although plaintiff alleges that she was arrested instead of receiving the medical treatment she needed (plaintiff's affidavit at 1), Mr. Brecht stated that the plaintiff refused his request to go to the hospital. Exhibit E at ¶15.

[4]The court notes that even if true, the comment in question, while inappropriate, is not in violation of any right alleged by plaintiff, nor does plaintiff make this comment the basis for any of her allegations.

3

enough to take of her clothes, put on the jail jumpsuit and be handcuffed.[5] Depo. of plaintiff at 62, submitted as Exhibit C to defendants' memorandum. She also stated that there was no window in the room. *Id.* Plaintiff was rehandcuffed and taken to the "drunk tank" by Officer Blankenship and Officer Jason Smitherman. Exhibit 1; plaintiffs' brief at 2. Plaintiff alleges that as she approached the entrance to the drunk tank, Officer Smitherman pulled the plaintiff's handcuffed arms up behind her back and that both officers then shoved her into a cement wall, from which plaintiff sustained a broken nose. Plaintiff also alleges that Officer Blankenship spit on her while she was in the floor with her nose bleeding. Plaintiffs' brief at 2; exhibit 1. She further testified that the officers never had to drag her, pick her up or do anything to her to go in the direction they wanted. Exhibit C at 133. She also stated that she was shackled and cuffed the entire time she was at the hospital and that when she was returned to the jail, she was again strip searched.[6] Exhibit C at 144-145. Plaintiff Mumpower does not allege that her arrest was unlawful. She was convicted of the public intoxication charge. Exhibit C at 128-129.

This plaintiff testified at deposition that her first memory of being in the Shelby County jail was sitting in a chair with her right hand handcuffed to the chair. Exhibit C at 29. She stated that her husband told her she swung at him, but that she does not remember this. Exhibit C at 38.

---

[5]Plaintiff testified that she does not remember if the handcuffs were completely removed or not while she was changing. Exhibit C at 66.

[6]According to defendants, plaintiff was taken to Shelby Baptist Medical Center for treatment for a broken nose. Defendants' facts at 7.

## B. Plaintiff Grauel

Plaintiff Grauel alleges that she was arrested for DUI by the Shelby County Sheriff's Department on August 31, 1997. Plaintiffs' brief at 2; Affidavit of Dennis Blackerby, submitted as Exhibit A to defendants' memorandum. This plaintiff was also taken to the Shelby County Jail where she was also told to strip nude. *Id.* She alleges that she was told to squat in front of a mirror and cough twice. *Id.*; affidavit of plaintiff, submitted as Exhibit 5 to plaintiffs' brief. This strip search was done in front of Officer Georgiana Smith. Plaintiffs' brief at 3. Plaintiff Grauel does not allege she was unlawfully arrested. She plead guilty to the DUI charge. Depo. of Grauel at 40 and 63, submitted as Exhibit B to defendants' memorandum. This plaintiff also does not allege any inappropriate comments on the part of the Shelby County Sheriff's Office.

## III. STANDARDS FOR EVALUATING SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

5

*Celotex Corp.,* 477 U.S. at 322-23. The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477 U.S. at 249. The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

6

However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.,* 814 F.2d 607, 609 (11th Cir. 1987).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Holcombe v. Alabama Dry Dock & Shipbuilding*, 1998 WL 758012 (S.D.Ala.); citing *Anderson*, 47 U.S. at 251-252.

## IV. DISCUSSION

### A. The Strip Searches

The plaintiffs contend that defendants' policy for strip searches is unconstitutional and hence in violation of their Fourth Amendment rights. Under 42 U.S.C. § 1983, a civil action is maintainable for "deprivation of any rights, privileges or immunities secured by the Constitution and laws." Thus, while the plaintiffs argue that the Sheriff is liable for the violations of plaintiffs' rights because he has "legal custody and charge of the jail in his county and all prisoners committed thereto," citing § 14-6-1 Alabama Code,1975, as amended 1996, this court's first inquiry must be whether any rights of the plaintiffs were violated. *See Magill v. Lee County*, 990 F.Supp. 1382, 1385, *aff'd* 161 F.3d 22 (11th Cir. 1998) ("In any § 1983 lawsuit, the plaintiff must initially show that she was 'deprived ... of a right secured under the Constitution or federal law" in order to recover"(citations omitted)). If this court finds no violation of rights, then questions of liability of individual defendants

7

become moot.   Thus, the issue here is whether the Sheriff of Shelby County violated these plaintiffs' Fourth Amendment rights in strip-searching them upon entry into the Shelby County Jail.[7]   The reasonableness of the search and its constitutionality are decided by the court as a matter of law. *Justice v. City of Peachtree City*, 961 F.2d 188, 193 (11th Cir.1992).   *See also Magill*, 990 F.Supp. at 1387 ("The court is supposed to balance the legitimate institutional concerns of security and safety of the ... Jail, against the rights of the Plaintiffs, pre-trial detainees").

The parties agree that the policy of the Shelby County Sheriff is to strip search all arrestees who will be placed into the general population.   Plaintiffs' brief at 3 and 4; defendants' statement of undisputed facts ("defendants' facts") at 8; depo. of Blankenship, submitted as Exhibit G to defendants' memorandum at 13-14.   Sheriff Jones testified at deposition that his policy was carried out regardless of whether an individual arrestee was suspected of concealing contraband. Plaintiffs' brief at 4, depo. of Jones at 13-14, submitted as Exhibit 8 to plaintiffs' brief.   According to defendants, all female public intoxication or DUI arrestees are placed in solitary confinement.   According to defendants, the only access to this confinement is through the general population.   Defendants' facts at 8.

In *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Court stated:

---

[7]While the plaintiffs' make various references to "body cavity" searches the evidence here clearly establishes that "body cavity" searches were not conducted on the plaintiffs, nor are they within the jail policy. *See e.g.* Exhibit 9 at 12.

8

> Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system....
>
> Maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted persons and pretrial detainees.

*Bell*, 441 U.S. at 545-546, 99 S.Ct. at 1877-78 (citations omitted) (quoting *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed.2d 1356 (1948)). The Supreme Court has concluded that strip searches are not per se unreasonable and may be performed in conformity with the Fourth Amendment on less than probable cause in some instances. *Justice*, 961 F.2d at 191; citing *Bell*, 441 U.S. at 559-560, 99 S.Ct. at 1884-85. In order to determine the reasonableness of the search and the instances requiring less than reasonable cause, the Supreme Court stated:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of that particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Bell*, 441 U.S. at 559, 99 S.Ct. at 1884.

In this case, both the plaintiffs were searched subject to lawful arrests and prior to being walked through the general population to reach solitary confinement. Both plaintiffs were told to undress, squat and cough and then redress in the jail jumpsuit in front of a same sex deputy. Plaintiff Mumpower alleges that this was done in a small room; plaintiff Grauel alleges that she was in a bathroom with a mirror. In either case, the plaintiffs do not allege

that anyone other than the female deputy could see them undress. They do not allege that they were wrongfully touched. The defendants' justification for all arrestees entering the general population being required to undress in front of an officer is that they have no means for guessing at which arrestee may or may not be carrying concealed contraband such as drugs or weapons.

As the plaintiffs admit, in *Bell*, the United States Supreme Court upheld an automatic strip search policy. Plaintiffs' brief at 9.   In *Bell*, the Court stated that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of ... detainees." *Justice*, 961 F.2d at 192; citing *Bell*, 441 U.S. at 546, 99 S.Ct. at 1878 ('pre-trial detainees 'simply do not possess the full range of freedoms of an unincarcerated individual.'"). Although plaintiffs rely heavily on *Justice v. Peachtree,* the court in that case ruled that "law enforcement officers may conduct a strip search of a juvenile in custody, even for a minor offense, based on reasonable suspicion to believe that the juvenile is concealing weapons or contraband." *Justice*, 961 F.2d at 192.

The issue before this court is virtually identical to that facing the court in *Magill, supra*.   There, the court ruled that "this court has little difficulty sustaining the constitutionality of the searches. The ... Sheriff has undertaken only to conduct a limited strip search on all newly-incarcerated persons at the Jail, only those who will be placed in a cell." *Magill*, 990 F.Supp. at 1389.

> The newly-admitted detainees in this case are in a similar position to the inmates in *Bell*. Neither is yet convicted of a crime , but both are entering (or

10

reentering) a prison institution after contact with the public.  If the searches in *Bell* are justified, the searches in this action are justified as well.  Furthermore, the detainees in this case are in a position to pose greater danger to the institution than was the detainee in *Peachtree City*  There, the juvenile was not even going to be placed into contact with the inmate population, yet the search was sustained....  This court would analogously note that the security dangers posed to the Lee County Jail are as high for one inmate as for another, no matter the crime they are charged with.... the inmates who might at first glance appear to pose the least threat may in fact pose the greatest because of their fear and potential threat to themselves.   Searches of all newly-admitted detainees who are going to be locked-up and in contact with other prisoners, are justified.

*Magill,* 990 F.Supp. at 1389-1390.  .Ct. 1817, 1825, 36 L.Ed.2d 668 (1973).[8]  The plaintiff cites no cases from this Circuit where a strip search policy such as the one at issue here has been held to be a violation of the Fourth Amendment.

In consideration of all of the foregoing, this court finds that the strip searches conducted on the plaintiffs did not violate any rights the plaintiffs had under the Fourth Amendment.  As such, this court is of the opinion that the defendants' motion for summary judgment on the plaintiffs' 42 U.S.C. § 1983 claim, concerning the plaintiffs' Fourth Amendment rights is due to be granted and the same be and hereby is **GRANTED**.

---

[8]The plaintiffs argue that an exception should have been made because "we are talking about nice women.  We are talking about talking about mothers.  We are talking about two upwardly mobile young ladies, with husbands, and children, who have spotless records.... They are not bums.  They are not drug addicts.  They are honest, forthright, godfearing, U.S. citizens." Plaintiffs' brief at 8-9.  Apparently, plaintiffs ask this court to rule that strip searches of alien atheist drug abusers are fine and that searches should be based on such statuses as social class, religion, lack if children and nationality.  This court can think of nothing more abhorrent. Plaintiffs also allege in their brief that they had spotless records.  Plaintiffs' brief at 9.  This is an apparent misstatement as both plaintiffs stated in their depositions that they had a prior arrest each.

11

The court finding that the strip searches were not a violation of the plaintiffs' constitutional rights and having ruled in defendants' favor on this issue, this court does not need to address the defendants' argument that they have qualified immunity concerning this claim of plaintiffs.

## B. The State Law Claims

The defendants argue that the plaintiffs' state law claims for invasion of privacy and outrageous conduct are barred by the doctrine of sovereign immunity.[9] The plaintiffs do not develop these state law claims in their brief. However, the Eleventh Circuit has provided ample direction on the question of sovereign immunity.

In *McMillian v. Johnson*, 101 F.3d 1363 (11th Cir.1996), the court reviewed the issue of immunity under Alabama law. The Court stated:

> But a recent decision by this Court, *Tinny v. Shores*, 77 F.3d 378 (11th Cir.1996), holds that under Alabama law a sheriff and deputy sheriff are shielded by sovereign immunity against claims based on intentional torts.... [T]he holding of the case is clear: under Alabama law, a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity. We are bound to follow *Tinny*, and do so.

*McMillian,*, 101 F.3d at 1365. Furthermore, in *Alexander v. Hatfield*, 625 So.2d 1142, 1144(Ala.1994), the Alabama Supreme Court ruled that deputy sheriffs are immune from suit to the same extent as sheriffs. This court can find no possible theory of liability for state law

---

[9]Although the plaintiffs' complaint refers to "outrageous conduct" this court assumes that the plaintiffs' are attempting to state a claim for the tort of outrage.

violations anywhere except the undeveloped allegations of plaintiffs' complaint.[10] As such, the court finds that the plaintiffs have failed to present any substantial evidence that either of these intentional torts were committed. However, even if the court could find facts supporting these allegations, the defendants are entitled to sovereign immunity under Alabama law. Therefore, the court **ORDERS** that the defendants' motion for summary judgment on the plaintiffs' state law claims be and hereby is **GRANTED**.

### C. Plaintiff Mumpower's Excessive Force Claim

The parties are in agreement that after plaintiff was in custody, her nose was broken. The facts surrounding how the plaintiff's nose got broken are very much in dispute. Defendant Blankenship alleges that the plaintiff took a swing at her. Exhibit 9 to plaintiffs' brief at 22, 27 (describing an altercation started by the plaintiff in which the two deputies were trying to restrain her). However, plaintiff states she was intentionally shoved into a concrete wall. Exhibit C at 55; Exhibit O at 54. The parties agree that the plaintiff was taken to a hospital emergency room for treatment for a broken nose. The hospital records were submitted to the court at oral argument. Additionally, according to Deputy Blankenship, the plaintiff was not handcuffed at this time. Exhibit 9 at 20. According to the plaintiff, she was handcuffed at this time. Exhibit C at 62.

---

[10]Plaintiffs argue that the Sheriff of Shelby County can be liable for the existence of an improper policy. Plaintiffs' brief at 5. However, this argument is addressed to alleged constitutional violations by the sheriff, and not to plaintiffs' state law claims. Because the plaintiffs' failed to develop their state law claims, this court assumes that the allegations of invasion of privacy and outrage are based on the strip searches as this is the logical analysis of the state law claims. Because this court has found nothing improper in Sheriff Jones' policy of strip searching all detainees, this court finds no improper policy.

The court finds that because genuine issues of material fact exist regarding plaintiff Mumpower's claim for excessive force, it is inappropriate for summary judgment. In consideration of the foregoing, the court **ORDERS** that the defendants' motion for summary judgment on the plaintiffs' claim for excessive force be and hereby is **DENIED**.

### V. CONCLUSION

In consideration of the foregoing, the Court finding that the defendants are entitled to summary judgment in their favor on all counts of plaintiffs' complaint except for plaintiff Mumpower's claim for excessive force;

It is therefore **ORDERED** by the court that the defendant's motion for summary judgment on all claims of plaintiff Grauel be and hereby are **GRANTED.** The court finding no just cause for delay, this judgment is hereby made final as a matter of law pursuant to Rule 54(b), F.R.C.P.

It is further **ORDERED** by the court that the defendant's motion for summary judgment on plaintiff Mumpower's state law claims and her Fourth Amendment unreasonable search claim be and hereby is **GRANTED.**

The court finding genuine issues of material fact remaining on plaintiff Mumpower's claim for excessive force, the defendant's motion for summary judgment on this issue be and hereby is **DENIED**.

**DONE** and **ORDERED** this the _____ day of April, 1999.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE

14